AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Missouri

In the Matter of the Search of )
)
THE **TARGET DEVICE** CURRENTLY IN THE CUSTODY )   Case No.   4:21 MJ 0327 DDN
OF THE DEA, FURTHER DESCRIBED IN ATTACHMENT A. )   SIGNED AND SUBMITTED TO THE COURT BY
) RELIABLE ELECTRONIC MEANS
)
) **FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, _____Rex Dixon_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21:841(a) & 846 | Possession with intent to distribute a controlled substance |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under penalty of perjury the forgoing is true and correct.

_____
*Applicant's signature*

Special Agent Rex Dixon DEA
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date:   December 14, 2021                    /s/   David D. Noce
                                              *Judge's signature*

City and state:   St. Louis, MO              Honorable David D. Noce, U.S. Magistrate Judge
                                              *Printed name and title*

AUSA:   OGDEN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE **TARGET DEVICE** CURRENTLY IN THE CUSTODY OF THE DEA, FURTHER DESCRIBED IN ATTACHMENT A**.** | No. 4:21 MJ 0327 DDN<br><br>FILED UNDER SEAL |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I**,** Rex Dixon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device – described in Attachment A, which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), United States Department of Justice (DOJ).  As such, I am an investigative and law enforcement officer of the United States (U.S.) within the meaning of Title 18, U.S. Code, Section 2510 (7), who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, U.S. Code, Section 2516 and offenses enumerated in Title 21 U.S. Code.  I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since April of 2019. As part of my training at Quantico, I attended courses involving the legal aspects of federal drug law enforcement, drug enforcement techniques, asset forfeiture and affidavit writing. During the course of my law enforcement experience, I have participated in investigations involving controlled substances, including investigations involving individuals dealing in heroin, fentanyl, cocaine, methamphetamine and marijuana. I have participated in investigations which

led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved. I am familiar with and have used normal methods of investigation, including but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts. Prior to becoming a Special Agent, I served as an active duty member of the United States Air Force for six (6) years.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. I have been involved in all aspects of narcotics trafficking investigations, including (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence. I have received training in narcotics investigations from the several agencies including the Drug Enforcement Administration.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 and 841(a) (conspiracy to distribute and possess with intent to distribute controlled substances) have been committed by **Danyel HERROD** or other persons known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED AND IDENTIFICATION OF TARGET DEVICES

6. The property to be searched includes the following:

**Target Device**: a White Apple iPhone, contained within a black protective case. DEA Non-Drug exhibit N-109.

7. Investigators seized the **Target Device** from 5118 Aubert St, St. Louis, MO 63115 on October 14, 2021, subsequent to the arrest of **Danyel HERROD**.

8. The applied-for warrant would authorize the forensic examination of the **Target Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

9. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing

3

and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the **Target Device**. A wireless telephone may have wireless connection capabilities such as Wi-Fi and Bluetooth.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some

       GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication Devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the **Target Device**.

 f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication Devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

 g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

 h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

 i. Internet: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international

borders, even when the **Target Devices** communicating with each other are in the same state.

10. Based on my training and experience, I know that the **Target Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation Device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the **Target Device**.

## PROBABLE CAUSE

11. I am a part of the investigative team that is currently investigating a drug trafficking organization (DTO) operating in the Eastern District of Missouri. The investigative team has identified **Danyel HERROD** as a member of this DTO. In October of 2021, investigators identified **Danyel HERROD** as a fentanyl and marijuana distributor in the St. Louis, Missouri area.

12. On October 14, 2021, a criminal complaint was signed in the Eastern District of Missouri, charging Kevin CUNNINGHAM and Micah GORDON with a conspiracy to commit a murder-for-hire in violation of Title 18, United States Code, Sections 2, 371, and 1958 (Cause No. 4:21-MJ-3257-NCC). The intended target of this murder-for-hire was **HERROD**. Investigators learned that **HERROD** owed CUNNINGHAM a substantial drug-related debt. CUNNINGHAM attempted to hire individuals to murder **HERROD** in exchange for monetary payment, and to attempt to recover some of this debt. This was learned through the use of a confidential informant (hereafter "CI"), who had multiple conversations with CUNNINGHAM and others discussing these facts. These conversations took place over the telephone and in person, all of which were audio and/or video recorded.

13. On October 14, 2021, after the Criminal Complaint was signed for CUNNINGHAM, investigators attempted to make contact with the intended victim, **HERROD**, as both part of the investigation and in order to notify him, for his own safety, of the plot against his life. Investigators arrived at 5118 Aubert Avenue, St. Louis, MO 63115, which is known to be **HERROD**'s residence. Upon knocking on the door, **HERROD** and at least two other accomplices emerged from the backdoor of the residence in an apparent attempt to evade law enforcement. Investigators observed two of the individuals to be carrying firearms, including **HERROD**.

14. A third individual fled the area, at which time **HERROD** and the unknown accomplice returned inside the residence with said firearms. Additionally, investigators observed **HERROD** drop a bag of white powder with several cellular telephones prior to re-entering the premises. The substance was seized by investigators but has not been tested, but based on training and experience, the color, texture, and packaging of the powder is consistent with fentanyl and appears to be approximately one ounce, which is consistent with an intent to distribute. The preliminary identification of the drug as fentanyl is also consistent with **HERROD**'s subsequent statement that he distributes fentanyl.

15. Investigators located a firearm along the flight path that the third individual ran. This location was also near a rear window of **HERROD**'s residence that was not visible to investigators after **HERROD** and the other male had entered the residence. The firearm was further described as Ruger 5.7 semi-automatic handgun and being of a 5.7 x 28 mm caliber. Additionally, an additional cellular device (the **Target Device**) was located in the backyard of 5118 Aubert St.

16. Investigators attempted to request that **HERROD** and the second subject exit the residence. Investigators proceeded to seek a search warrant for the premises while continuing to

request that **HERROD** and the second subject exit the residence.  On October 14, 2021, United States Magistrate Judge Noelle Collins issued a federal search warrant for the residence.  On October 14, 2021, the search warrant was executed.  Prior to the execution of the search warrant, **HERROD** and a second individual, who had tried to flee along with another resident, exited the residence from the front door after refusing investigators requests to exit the residence.

17. Investigators arrested **HERROD** and found him to be in possession of approximately $2,000 of various denominations.  **HERROD** was advised of his rights per *Miranda*, as witnessed by this affiant, and waived his rights.  A search of the residence by investigators revealed several magazines containing 5.7 x 28 mm caliber ammunition, the same caliber as the firearm located outside the residence.  Investigators located capsules of suspected fentanyl/heroin on the toilet in the bathroom as well as scales and baggies in the residence that were believed to be associated with the distribution of controlled substances.

18. **HERROD** provided his consent to search his rental vehicle that was on the street near **HERROD**'s residence.  Inside the vehicle, investigators located a magazine containing 5.7 x 28 mm caliber ammunition as well as a bag containing white powder.  The substance has not been tested, but based on training and experience, the color, texture, and packaging of the powder is consistent with fentanyl and appears to be approximately one-half ounce, which is an amount consistent with an intent to distribute.

19. **HERROD** provided his consent to a search of two cellular telephones, which were found in the back yard located next to the bag of white powder. **HERROD** stated that the **Target Device** did not belong to him, and that he believed it belonged to one of the individuals that fled from law enforcement.

20. On October 14, 2021, the **Target Device** was seized as DEA non-drug exhibit N-109. The **Target Device** is currently in the lawful possession of DEA, within the Eastern District of Missouri.

21. While the investigative agency(ies) might already have all necessary authority to examine the **Target Device**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **Target Device** will comply with the Fourth Amendment and other applicable laws. The owner/user of the **Target Device's** association with **HERROD**, combined with both his/her immediate flight and abandonment of the **Target Device** when contacted by law enforcement, as well as and the **Target Device's** proximity to a firearm and distributable amounts of controlled substances, gives rise to probable cause that the **Target Device** will contain evidence of criminality.

22. In my training and experience, I know that the **Target Device** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **Target Device** first came into the possession of the investigative agency(ies).

23. I know from prior investigations and subsequent de-briefing of involved parties by investigative team members, that persons such as those described herein are known to compartmentalize the use of multiple electronic devices. As an example, a subject will use a certain electronic device to contact sources of supply, another electronic device to contact couriers, and other electronic devices to contact underlings, so forth and so on. Based on my training and experience and that of the investigative team, I know these measures are employed to thwart law enforcement's ability to detect persons engaged in criminal activity and conduct electronic surveillance on co-conspirators. Based on the number of electronic devices seized during this investigation, investigators believe that the targets described herein may be

compartmentalizing the use of his electronic devices, as related above.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the **Target Device**. This information can sometimes be recovered with forensics tools.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Device** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Device** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the **Target Device**. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

11

team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Target Device** to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

27. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Target Device** described in Attachment A to seek the items described in Attachment B.

28. Because this warrant seeks only permission to examine the **Target Device** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

29. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application

and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, *i.e.*, post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

    I state under penalty of perjury the forgoing is true and correct.

Respectfully submitted,

_____
Rex Dixon
Special Agent
DEA

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

 /s/  David D. Noce                                       Dec. 14, 2021
HONORABLE DAVID D. NOCE                     Date
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

The property to be searched includes the following:

**Target Device**: a white Apple iPhone, contained within a black protective case. DEA Non-Drug exhibit N-109.

 

## ATTACHMENT B

1. All records on the **Target Device** described in Attachment A that relate to violations of Title 21, United States Code, Sections 846 and 841(a) (conspiracy to distribute and possess with intent to distribute controlled substances) and involve **Danyel HERROD** and others known and unknown, including:

    a. Lists of customers and related identifying information;

    b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. All bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Target Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.